IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSELL BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-810 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF UNIONTOWN, | ) | Judge David S. Cercone |
| DONALD GMITTER, JONATHAN | ) | Magistrate Judge Lisa Pupo Lenihan |
| GRABIAK, and MICHAEL GARROW, | ) | |
| | ) | Re: Doc. No. 27 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment at Doc. No. 27 be granted.

II. REPORT

A. Relevant Facts

The following relevant facts are undisputed unless otherwise indicated.

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights to the United States Constitution. Specifically, Plaintiff avers the following four counts in his Amended Complaint:

In Count I for Municipal Liability, Plaintiff avers that the Defendant City of Uniontown ("Defendant City") maintained a policy, custom or practice wherein it failed to properly train, supervise, and discipline its front-line officers which proximately caused Plaintiff's injuries, all

in violation of the Fourth Amendment and the procedural due process clause of the Fourteenth Amendment. (Amended Complaint, Doc. No. 19 at ¶¶ 10-20.)

In Count II for Malicious Prosecution, Plaintiff avers that the Defendant Officers Garrow Gmitter, and Grabiak ("Defendant Officers") violated Plaintiff's Fourth Amendment rights when they allegedly filed false criminal charges and prosecuted those charges against Plaintiff. (Amended Complaint, Doc. No. 19 at ¶¶ 20-26.)

In Count III for Civil Conspiracy, Plaintiff avers that Defendant Officers agreed that "they would arrest and prosecute the Plaintiff without probable cause and that the Plaintiff would be prosecuted to the fullest extent of the law," all in violation of the Fourth Amendment. (Amended Complaint, Doc. No. 19 at ¶ 28, ¶¶ 27-32.)

Finally, in Count IV for Abuse of Process, Plaintiff avers that Defendant Officers "maintained and actively participated in [Plaintiff's] criminal prosecution . . . undertaken or maintained for a purpose of which the criminal justice system was not intended," all in violation of the procedural due process clause of the Fourteenth Amendment. (Amended Complaint, Doc. No. 19 at ¶ 35, ¶¶ 33-37.)

On February 23, 2004, Officer Garrow arrived at 117 Mount Vernon Avenue, Uniontown, Pennsylvania, to investigate a complaint concerning vehicles parked behind Plaintiff's residence, Apartment No. 2 at 117 South Mount Vernon Avenue. While Officer Garrow was conducting his investigation, Plaintiff came out of his apartment and began screaming at the him. Officer Garrow called for back up and Officers Gmitter and Grabiak responded to the scene. Prior to this date, Plaintiff had numerous contacts with the Uniontown Police Department, including the Defendant officers. Plaintiff claims that during these prior

contacts, he had been treated disrespectfully and assaulted. (Plaintiff's Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment, Doc. No. 35, at ¶ 4.)

Officer Gmitter observed that Plaintiff was uncooperative with Officer Garrow and that Plaintiff was telling the police "to get the fuck out of his yard, for us to leave him alone, he did not want to be bothered with the police." (Doc. No. 30 at 3.) Plaintiff went back into his house and called 911. The parties dispute precisely what was said to the 911 dispatcher, Diana Franks. Defendants contend that Plaintiff told the 911 dispatcher that Plaintiff said he was going to have someone come over to his house with a gun and shoot the police that were in his yard. (Defendants' Statement of Undisputed Material Facts, Doc. No. 32 at ¶ 5.) Plaintiff denies that he uttered any threat to or against the police officers. (Plaintiff's Concise Statement of Facts, Doc. No. 35 at ¶ 5.) Plaintiff's criminal trial transcript reveals that Plaintiff testified he told the 911 dispatcher that "I said what should I do, should I call someone with a gun to come and sit with us until they leave? She [Diana Franks] said, Mr. Brooks, don't worry they are not there for you." (Doc. No. 31 at p. 5.) Thereafter, the Officers received a message over the police radio to call 911 immediately. Officer Grabiak contacted the 911 dispatcher who reported what Brooks had said. At Plaintiff's criminal trial, the 911 dispatcher, Diana Franks, testified that she received a call from an individual named Russell Brooks on the date and time in issue, and that "[h]e stated that if he wasn't told what was going on, that he would then go find a friend and get a gun." (Doc. No. 30 at 18.) Franks further testified that Plaintiff also indicated that "the problem would be taken care of." (Doc. No. 30 at 18.)[1]

---

[1]Plaintiff disputes that he made this statement to the 911 dispatcher, and notes that he requested State Police intervention due to an assault by police weeks before this incident. (Plaintiff's Concise Statement of Facts in Opposition to Defendants' Motion for Summary

After Officer Grabiak spoke with the 911 dispatcher, Plaintiff was arrested and taken to the Uniontown Police Department. On this same day, February 23, 2004, a Criminal Complaint and Affidavit of Probable Cause were completed by Officer Jonathan Grabiak. In the Criminal Complaint, Plaintiff was charged with the following violations of the Pennsylvania Crimes Code: 18 Pa. Con. Stat. Ann. § 5503 (a) (disorderly conduct); 18 Pa. Con. Stat. Ann. § 2709 (a)(3) (harassment); 18 Pa. Con. Stat. Ann. § 5505 (public drunkenness); and 18 Pa. Con. Stat. Ann. § 2706 (terroristic threats). In the Affidavit of Probable Cause, Officer Grabiak swore to the following as his version of the events which resulted in the arrest of Plaintiff:

> On said date and time Officer Garrow responded to Rear 117-119 S. Mt. Vernon Avenue for a report of abandoned vehicles. While on scene Officer Garrow requested assistance from Car #2 Officer Gmitter and Grabiak (myself). Upon arrival Officer Garrow said Russell Brooks was harassing him about a past incident. Brooks was yelling at Officers from a distance of about 300 feet. At this time Fayette County 911 called and asked for this officer to call them by phone. I did not have a cell phone but Officer Gmitter did. Fayette County 911 stated Russell Brooks called and stated he was going to get a gun. Russell Brooks was taken into custody, he had a strong odor of alcohol on his breath, glassy eyes and slurred speech. On station Brooks made a spontaneous utterance stating he should get someone with a gun. I called Fayette County 911 and listened to the recording. Diana Franks was the dispatcher that took the call. The call come [sic] from 119 S. Mt. Vernon Avenue, Uniontown, residence of Russell Brooks. Russell Brooks said his name on the tape, said the Uniontown Police were in his back yard and would not talk to him. Brooks stated the Police kidnapped [sic] his daughter, what's up, what's the matter. Brooks said he was scared, the police beat him up, he needs to call somebody with a gun.

(Doc. No. 28-2 at 6.)

---

Judgment, Doc. No. 35, at ¶ 23.) He testified at his criminal trial that when he said "someone with a gun," he was referring to the State Police. (Plaintiff's Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment, Doc. No. 35, at ¶ 29.) Plaintiff also emphasizes that there are at least three different versions of what Plaintiff said during the 911 call, raising issues of credibility and confusion. (Id.) Finally, he notes that the verbatim tape or transcript of the telephone call was never produced at any judicial proceeding. (Id. at ¶ 24.)

4

Later in the day, Plaintiff appeared for his arraignment before a District Magistrate and advised of the various charges against him. He was then taken to the Fayette County Jail where he remained until he was released on bail. (Doc. No. 28-2 at 7, 9-10.)

On May 14, 2004, Plaintiff attended his preliminary hearing before the Honorable Mark Blair. Thereafter, the public drunkenness charge was dismissed. See January 11, 2006 Opinion of the Honorable Steve P. Leskinen, Doc. No. 34-2 at 50.

The criminal trial against Plaintiff commenced on February 9, 2005 in the Court of Common Pleas of Fayette County, before the Honorable Steve P. Leskinen. At the time of trial, Plaintiff was prosecuted on three counts of terroristic threats, and one count of disorderly conduct.[2]

B.  Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together

---

[2]Plaintiff disputes that these were the charges for which he was tried. Instead, Plaintiff contends that he was tried on one count of harassment, one count of disorderly conduct, and one count of terroristic threats, and that he was acquitted on all charges except disorderly conduct. (Plaintiff's Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment, Doc. No. 35, at ¶ 11.) A careful review of the criminal trial transcript submitted with Defendants' Motion for Summary Judgment clearly indicates that Plaintiff was tried on three counts of terroristic threats (for which he was acquitted), and one count of disorderly conduct (for which he was convicted). See Doc. No. 29, at 3; Doc. No. 31 at 89-91, 93-94, 102.) Further, Judge Leskinen found "that the summary offense of harassment [was] subsumed within the disorderly conduct, and therefore the court [did not] make a separate finding of guilty, but [entered] a verdict of not guilty on that charge." (Doc. No. 31 at 40.)

with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis added by Matsushita Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986). While any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56 (e); Celotex Corp., 477 U.S. at 324; J.F. Feeser,Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

      C.     Section 1983 Claims

Section 1983 of the Civil Rights Act provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. Thus, to state a claim for relief under this provision, the plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under the color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

1. Malicious Prosecution

In Count II of his Complaint, Plaintiff avers a Fourth Amendment malicious prosecution claim. To establish a § 1983 malicious prosecution claim, the plaintiff must demonstrate all of the following:

> 1) the defendants initiated a criminal proceeding;
> 2) the criminal proceeding ended in plaintiff's favor;
> 3) the proceeding was initiated without probable cause;
> 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Preliminarily, Defendants are clearly entitled to judgment as a matter of law on Plaintiff's malicious prosecution claim as it may relate to the disorderly conduct charge. As noted above, an essential element of a § 1983 malicious prosecution claim is that the criminal proceeding end in plaintiff's favor. See Marasco, 318 F.3d at 514. Plaintiff was convicted of this offense at trial, and has presented no record evidence that this conviction has been disturbed on appeal.

Next, even assuming that Plaintiff can establish every other element of a § 1983 malicious prosecution claim relating to the charges of terroristic threats, public drunkenness and

harassment, the record evidence establishes as a matter of law, that the proceeding against him was initiated with probable cause. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). In determining whether probable cause exists to support an arrest, the analysis must be based upon the totality of circumstances including "the objective facts available to the officers at the time of the arrest." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (quoting United States v. Glasser, 759 F.2d 1197, 1206 (3d Cir. 1984)). Subjective intentions of police officers are irrelevant to a Fourth Amendment probable cause analysis. Whren v. United States, 517 U.S. 806, 813 (1996). Although generally a question for the jury in a § 1983 claim, a district court may find the existence of probable cause as a matter of law on summary judgment, but only if the evidence, viewed most favorably to the Plaintiff, would reasonably support a finding that probable cause to support the arrest did exist. See Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998); Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).

Whether it would have been clear to a reasonable officer that probable cause justified the arrest requires an examination of the crimes in issue. Plaintiff was charged with terroristic threats under Pennsylvania Criminal Code, 18 Pa. Con. Stat. Ann. § 2706 which provides as follows:

> A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> (1) commit any act of violence with intent to terrorize another.
> . . .
> (e)Definition.–As used in this section, the term "communicates" means, conveys

8

> in person or by written or electronic means, including telephone, electronic mail, Internet, facsimile, telex and similar transmissions.

18 Pa. Con. Stat. Ann. § 2706.

Plaintiff was also charged with public drunkenness under Pennsylvania Criminal Code, 18 Pa. Con. Stat. Ann. § 5505 which provides as follows:

> A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol . . . to the degree that he may endanger himself or other persons or property or annoy persons in his vicinity.

18 Pa. Con. Stat. Ann. § 5505.

The final charge described in the criminal complaint against Plaintiff was harassment under Pennsylvania Criminal Code, 18 Pa. Con. Stat. Ann. § 2709 (a)(3) which provides as follows:

> A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
> . . .
> (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose.

18 Pa. Con. Stat. Ann. § 2709 (a)(3). A "course of conduct" is defined as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa. Con. Stat. Ann. § 2709 (f) (2007 Supp.).

Record evidence here, viewed most favorably to Plaintiff Brooks, demonstrates that probable cause existed for his arrest on all charges. Based upon the totality of circumstances viewed in a light most favorable to Plaintiff, including the objective facts available to the Defendant officers at the time of the arrest, a person of reasonable caution could conclude that these offenses had been committed by Plaintiff.

First, Plaintiff indirectly communicated a threat to commit an act of violence (through the 911 operator). This threat concerned finding someone with a gun so that Plaintiff could act upon his perceived problems with the police. Although Plaintiff contends that "someone with a gun" referred to the State Police, there is nothing in the record to suggest that the Defendant Officers understood that to be the meaning underlying Plaintiff's communication to the 911 dispatcher at the time of the arrest. Instead, the Defendant Officers placed Plaintiff's words (as communicated to them by the 911 dispatcher) into the context of the situation that then confronted them. It is undisputed that Plaintiff was agitated when Officer Garrow arrived at the scene, and that Plaintiff's agitation grew when the back-up Officers arrived. It is undisputed that Plaintiff told the officers "to get the fuck out of his yard." It is also undisputed that Plaintiff had prior dealings with these officers, and that as a result of these dealings, Plaintiff could be harboring ill will towards them. In light of all these facts and circumstances, it was reasonable for the Defendant Officers to take the 911 operator's warning seriously. Further, in light of the close working relationship between 911 operators and the police, it was reasonable for the Defendant Officers to rely on the information provided to them. The record reflects no evidence that would prompt a reasonable officer to question the operator's veracity.

Moreover, Plaintiff's attempt to create a question of fact concerning precisely what Plaintiff said to the 911 dispatcher does not preclude summary judgment on this claim. The relevant inquiry in determining whether probable cause to support an arrest exists is an analysis based upon the totality of circumstances in conjunction with "the objective facts available to the officers at the time of the arrest." Sharrar, 128 F.3d at 818. Contrary to Plaintiff's assertions that a possible mistranslation or misreporting of the statement by the dispatcher mars its

believability, the critical inquiry on Defendants' Motion for Summary Judgment on Plaintiff's § 1983 malicious prosecution claim, is the substance of the statement received by the Defendant Officers from 911, and how that statement contributed to their belief that crimes had been committed by Plaintiff. The criminal trial transcript reflects that Diana Franks advised the police dispatcher to let the officers know what Plaintiff had told her on the phone so that the officers would proceed with caution. (Doc. No. 30 at 48.) Further, Officer Grabiak, in his Affidavit of Probable Cause, swore that "Fayette County 911 stated Russell Brooks called and stated he was going to get a gun." (Doc. No. 28-2 at 6.) The Plaintiff has adduced no evidence to suggest that the 911 operator did not report her conversation with Plaintiff to Officer Grabiak as reflected in his Affidavit of Probable Cause. Nor has Plaintiff presented any evidence to suggest that Defendant Officers did not reasonably believe that which was reported to them. Therefore, the Court finds as a matter of law, that the undisputed record evidence in this case reasonably supports a finding that probable cause existed to support Plaintiff's arrest for terroristic threats.

Similarly, as a matter of law, Defendant Officers had probable cause to arrest Plaintiff for public drunkenness pursuant to 18 Pa. Cons. Stat. Ann. § 5505. The affidavit of probable cause reflects that Plaintiff "had a strong odor of alcohol on his breath, glassy eyes and slurred speech." (Doc. No. 28-2 at 6.) In addition, as discussed above regarding the charges of terroristic threats, Defendant Officers reasonably believed that Plaintiff threatened them with physical danger, and annoyed others in his vicinity. See 18 Pa. Con. Stat. Ann. § 5505.

Likewise, Defendant Officers, as a matter of law, had probable cause to arrest and charge Plaintiff with harassment pursuant to 18 Pa. Cons. Stat. Ann. § 2709(a)(3) in that they reasonably believed, based upon all attendant facts and circumstances, that Plaintiff repeatedly

11

threatened them: once as communicated to them by the 911 operator, and again, after transporting Plaintiff, he "made a spontaneous utterance stating he should get someone with a gun". (Affidavit of Probable Cause, Doc. No. 28-2 at 6.)

Thus, Plaintiff cannot establish the prima facie element that the proceeding against him was initiated without probable cause, and Defendants' Motion for Summary Judgment on Plaintiff's § 1983 malicious prosecution claim should be granted.

### 2. Abuse of Process

Plaintiff is correct that an action for abuse of process is quite different than an action for malicious prosecution. The United States District Court for the Middle District of Pennsylvania has considered the following:

> "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. . . . [Malicious prosecution] has to do with the wrongful initiation of such process, while abuse of civil process [or criminal process] is concerned with a perversion of a process after it is issued."

Bristow v. Clevenger, 80 F. Supp.2d 421, 430 (M.D. Pa. 2000) (quoting McGee v. Feege,535 A.2d 1020, 1023 (Pa. 1987) (internal quotations and citations omitted)). Consequently, Plaintiff will prevail on a § 1983 claim for abuse of process where "prosecution is initiated legitimately and thereafter is used for a purpose other then that intended by the law." Bristow, 80 F. Supp.2d at 431 (quoting Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989) (other citations omitted)). Again, the Bristow court explained as follows:

> Courts have held that "[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained." . . . "Examples of actions that are recoverable under the abuse of

12

> process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." . . . "To establish a claim for abuse of process, there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process.'"

Bristow, 80 F. Supp.2d at 431 (internal citations omitted). See also Gleeson v. Robson, 2005 WL 1210948 at *25 (M.D. Pa. 2005).

Plaintiff here does not maintain that criminal process was legitimately issued and then perverted for some improper purpose. Conversely, Plaintiff argues that there was no probable cause for his arrest. See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Doc. No. 36 at 19-20 ("criminal charges ... were unfounded"; "charges were placed . . . with knowledge of the untruthfulness of the alleged utterances attributed to Brooks.") Further, there is no record evidence that Defendants sought or desired anything other than a criminal conviction for the charges in issue. Plaintiff has adduced no evidence that the criminal proceeding against him was perverted by extortion, blackmail, or intimidation; that is, Plaintiff has offered no evidence of any act or threat aimed to achieve an illegitimate objective. See also Gleeson, 2005 WL 1210948 at *25. The fact that Plaintiff contends that Defendants filed charges to "'fix' Brooks for making the 911 call," (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Doc. No. 36 at 20) and that consequently, Defendants filed the criminal charges with ill will and malice, is precisely the basis for a malicious prosecution action, not abuse of process. See Bristow, 80 F. Supp.2d at 431 & n.10 (citing McGee, 535 A.2d at 1023); Cameron v. Graphic Management Assoc., Inc., 817 F. Supp. 19, 21 (E.D. Pa. 1992) ("[T]here is no cause of action for abuse of process if the [Defendant], even with bad intentions, merely carries out the process to its authorized conclusion.").

13

Therefore, Defendants' Motion for Summary Judgment on Plaintiff's § 1983 abuse of process claim should be granted.

      3.     Municipal Liability

A municipality will be liable under § 1983 only if one if its employees violated a plaintiff's civil rights as a result of a municipal policy or practice. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). The City of Uniontown cannot be vicariously liable under Monell unless one of its employees is primarily liable under § 1983. Because summary judgment should be granted on Plaintiff's § 1983 malicious prosecution and abuse of process claims against the Defendant Officers, Plaintiff cannot maintain his claim against the City of Uniontown. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989). Consequently, Defendants' Motion for Summary Judgment on Plaintiff's municipal liability claim should be granted.

      4.     Conspiracy

Summary Judgment should also be granted on Plaintiff's conspiracy claim. A cause of action for civil conspiracy necessarily requires a separate underlying tort. "Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant." In re Orthopedic Bone Screw Products Liability Lit., 193 F.3d 781, 789 (3d Cir. 1999). See also Pardue v. Gray, 136 Fed. Appx. 529, 533 (3d Cir. 2005). Here, summary judgment should be granted on Plaintiff's § 1983 claims for malicious prosecution and abuse of process. Consequently, summary judgment should also be granted on Plaintiff's

conspiracy claim against all Defendants.

III.   CONCLUSION

It is respectfully recommended that Defendants' Motion for Summary Judgment at Doc. No. 27 be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: May 28, 2008

cc: The Honorable David S. Cercone

    All counsel of record
    Via electronic filing